## 70268. THE STATE v. MORROW.
### (334 SE2d 344)

CARLEY, Judge.

Appellee was arrested on a charge that he had sexually molested his seven-year-old daughter. Shortly after the arrest, the State sought the issuance of a search warrant, the object of which was medical testing of appellee to determine if he had gonorrhea. The warrant was issued and the test was conducted. Appellee was subsequently indicted for child molestation. Prior to trial, appellee filed a motion to suppress the results of the medical test. The trial court granted appellee's motion and the State appeals.

1. In granting appellee's motion to suppress, the trial court made the determination that the warrant had not issued on probable cause and that the test had been conducted in violation of appellee's Fourth Amendment rights. See *Schmerber v. California*, 384 U. S. 757 (86 SC 1826, 16 LE2d 908) (1966); *Creamer v. State*, 229 Ga. 511, 514 (2) (192 SE2d 350) (1972). "The *Creamer* case, and the *Schmerber* case on which it relies, authorized a search into a person's body against his will in instances where the [S]tate had good reason to believe that the person had committed a crime, and where the manner of the search was reasonable." *State v. Haynie*, 240 Ga. 866, 867 (242 SE2d 713) (1978). See also *Winston v. Lee*, ___ U. S. ___ (106 SC ___, 84 LE2d 662) (1985).

In issuing a search warrant, " '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including

the "veracity" and "basis of knowledge" of persons supplying hearsay information, *there is a fair probability that contraband or evidence of a crime will be found in a particular place.* And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.' [Cit.]" (Emphasis supplied.) *State v. Stephens,* 252 Ga. 181, 182 (311 SE2d 823) (1984). The affidavit in the instant case states that the affiant had received information "within the last month" from the seven-year-old victim, as well as the victim's mother, concerning "acts of sexual intercourse performed upon [the victim] by her father, [appellee], in Barrow County, Georgia within the past two months." The affiant deemed the victim to be "reliable because she had a truthful demeanor when relating her specific and detailed allegations to [the] affiant . . . ," and also because she had "demonstrated she knows the difference between right and wrong and knows what it is to tell the truth." Declarations made on the personal knowledge of the named victim of a crime are sufficient to show the existence of probable cause to believe that the crime has been committed. See generally *Peacock v. State,* 170 Ga. App. 309 (1) (316 SE2d 864) (1984).

Moreover, the affidavit in the instant case contained more than the seven-year-old victim's declarations that appellee had molested her. The affidavit further recited that "the child's mother . . . , a concerned citizen who had a truthful demeanor, told affiant that the father, [appellee], was the only person whom she had ever entrusted custody of the child to. These sexual acts allegedly took place while the father was exercising visitation rights with the child." In its review of the affidavit, however, the trial court, totally discounted this statement attributed to the victim's mother, ruling that the "child undoubtedly has been in contact with persons other than her father; such as, school officials and relatives. Certainly the child has had contact with persons other than her father outside the presence of her mother, although the mother may not feel that she has 'entrusted the custody of the child to' any of these persons."

As the trial court noted, there is little doubt that, within the relevant two-month period preceding the issuance of the search warrant, the victim had had contact with persons other than appellee. However, under the circumstances, such "contact" would be irrelevant to the issue of probable cause unless that contact were of a sexual nature. In this regard, the affidavit clearly shows that the *only* assertions by the victim of sexual contact concerned appellee, and no other person. The mother's statement clearly establishes that, to the personal knowledge of the mother, appellee had the opportunity to commit the acts of molestation as the victim had asserted that they had occurred, and that, appellee was the only person who had an opportunity. Thus, the mother's statement concerning appellee's "custody"

and visitation rights is certainly corroborative of the victim's allegations that she had been molested by appellee "within the past two months." " 'It is enough, for purposes of assessing probable cause, that "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale," thus providing "a substantial basis for crediting the hearsay." [Cit.]' [Cits.]" *State v. Hockman*, 171 Ga. App. 504, 506 (320 SE2d 241) (1984). Accordingly, when consideration is given to the underlying crime, the trial court erred in discounting totally the corroborative information contributed by the victim's mother.

The initial determination should have been whether the circumstances set forth in the affidavit demonstrated that there was *probable cause* to believe that *appellee* had committed the crime of sexually molesting his daughter, not whether those circumstances were sufficient to prove his guilt of that crime. "The law sanctions a difference between the methods permitted to prove the ultimate issue of guilt and that of probable cause for search or arrest. [Cit.]" *Ward v. State*, 234 Ga. 882, 883 (218 SE2d 591) (1975). "By no means is probable cause to be equated with proof by even so much as a preponderance of evidence." *State v. Stephens*, supra at 184. Our review of the affidavit reveals that it provided the magistrate "a substantial basis" for concluding that probable cause existed to believe that appellee had sexually molested his daughter. *State v. Stephens*, supra.

2. With regard to the issue of whether there was a fair probability that appellee would be found to be suffering from gonorrhea, the affidavit contained the following statement: The victim "is currently suffering from gonorrhea, which the [appellee] transmitted to her while he was engaged in sexual intercourse." Considering the context in which this statement appears in the affidavit, it apparently was a continuation of the affiant's recitation of factual statements that had been related *to* him by the victim and her mother. Thus, the affiant did not merely conclude that the victim was currently suffering from gonorrhea as a result of being sexually molested by appellee. He was told by the victim and her mother that that was the case. Nonetheless, the trial court ruled that the affiant's statement was a "bold conclusion" unsupported by facts.

The trial court apparently considered that at least that portion of the statement which asserts that the *victim* herself suffers from gonorrhea constituted reliable information. As noted above, the reliability of the victim and of her mother as informants was sufficiently shown. This being true, under the totality of the circumstances, a statement by either concerning the current state of the victim's health could be found to constitute sufficiently reliable information, even if the affiant failed to specify in the affidavit that he had independently corroborated that statement. "[T]he question is not

whether the informant lied, [cit.], but rather whether the affiant at the time the search warrant was issued had probable cause or substantial basis to believe it was true, so that reliance was justified. [Cit.] The law enforcement officer must act on what he knows, or should know, in the exercise of due diligence. [Cit.] He is not held to a standard of one hundred percent verification of an informant's information." *Thomas v. State*, 173 Ga. App. 481, 484 (326 SE2d 840) (1985).

Instead, it was apparently that portion of the above quoted statement to the effect that it was *appellee* who had transmitted the gonorrhea to the victim that the trial court found unacceptable. The trial court, finding that this was an unsubstantiated conclusion, held that there was no reliable information in the affidavit to establish "probable cause to believe that the evidence of a sexually transmitted disease was present on or within the [appellee's] body." The trial court concluded that "[i]t may well have been a different matter if the child or the mother . . . had informed the affiant that the [appellee] *was* suffering from gonorrhea on or about the time the child was allegedly molested and that there *was* reason to believe that the [appellee] was still suffering from gonorrhea at the time the search warrant was issued." (Emphasis supplied.) The error that we perceive in the trial court's reasoning is that it proceeds from an incorrect concept of "probable cause." " '[P]robable cause does not demand the certainty we associate with formal trials.' [Cit.] The issuing magistrate *now* need only conclude that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.' [Cit.]" (Emphasis in original.) *State v. Stephens*, supra at 184. We do not deal with a search of the body for evidence of a physical condition which has readily observable external manifestations. Compare *Schmerber v. California*, supra (intoxication); *Winston v. Lee*, supra (bullet); *Creamer v. State*, supra (bullet). It would be very difficult for anyone else to *know for a fact* that appellee was suffering from gonorrhea. A "disease can exist even before there are any outward manifestations thereof. . . ." *Lovett v. American Family Life Ins. Co.*, 107 Ga. App. 603, 605 (131 SE2d 70) (1963). If it were already possible to prove *as a fact* that appellee had the disease, it is unlikely that there would be a need to conduct the test that the State sought by securing the warrant.

A determination of whether there was probable cause to conduct the requested test on appellee should be based upon the "totality of the circumstances." *State v. Stephens*, supra. The totality of the circumstances evidenced by the affidavit was as follows: The victim currently suffers from gonorrhea. The victim states that she recently had sexual intercourse with appellee. There are no allegations by the seven-year-old victim of any sexual contact whatsoever between her-

self and any other person. Appellee's opportunity to commit the crime under the conditions that the victim alleged it to have occurred is corroborated. Under the totality of these circumstances, we find that the affidavit evinces, at the very least, a "fair probability" that the victim contracted gonorrhea from the only person whom she alleges to have sexually molested her.

3. The trial court also found that the information concerning gonorrhea that was related in the affidavit was stale. As noted above, the affiant stated that "within the last month" he had received the relevant information concerning acts of sexual intercourse which had taken place "within the past two months." The trial court concluded: "Due to the vague manner in which the time elements are set out in the affidavit, the [appellee] certainly could have sought and received medical treatment eliminating any evidence of a venereal disease which might have been on or within his body at the time he allegedly had contact with the child."

"Time is assuredly an element of the concept of probable cause. [Cit.] However, the precise date of an occurrence is not essential. Rather, the inquiry is as to whether the factual statements within the affidavit are sufficient to create a reasonable belief that the conditions described in the affidavit might yet prevail at the time of issuance of the search warrant. [Cit.]" *State v. Luck*, 252 Ga. 347 (312 SE2d 791) (1984). "The nature of the alleged criminal activity is an important factor to be considered when assessing the timeliness of an informant's tip. [Cit.]" *Tabb v. State*, 250 Ga. 317, 323 (297 SE2d 227) (1982). The underlying crime at issue here is child molestation. Accordingly, we do not deal with a search for evidence such as contraband, which may be easily removed from the location specified in the affidavit. As the affidavit in the instant case clearly specifies, the evidence sought is of "a sexually transmitted disease." Gonorrhea is statutorily declared to be a disease which is "contagious, infectious, communicable, and dangerous to the public health." OCGA § 31-17-1. Indeed, the disease is of such concern to the public at large that "[l]aw enforcement authorities of the jurisdiction wherein any such person so infected or suspected of being infected is located shall offer such assistance, including restraint and arrest, as shall be necessary to assure examination and treatment. . . ." OCGA § 31-17-3. It is thus clear that an allegation that gonorrhea was contracted from a named individual "within the past two months" does not constitute a mere allegation of "single, isolated" instance of a transitory condition. *State v. Luck*, supra at 347. To the contrary, it is an assertion that the named individual "within the past two months" suffered from a continuing physical condition which, if untreated, constitutes an *ongoing* present danger to the public health.

As the trial court noted, appellee voluntarily "could have sought

and received medical treatment" for the disease subsequent to his alleged infection of the victim and prior to the State's application for a warrant. By the same token, however, the defendant in *State v. Thornton*, 253 Ga. 524 (322 SE2d 711) (1984) presumably "could have" had dental work between the time of the crime and the time that dental impressions were taken. Likewise, prior to the issuance of the search warrant in *State v. Luck*, supra, the defendants therein possibly "could have" disposed of the contraband which had reportedly been located at their residence on previous occasions. We reiterate, the question is not whether, based upon an after-the-fact, de novo review, the information in an affidavit is sufficient to prove that the evidence sought *will be* in the location to be searched. The affidavit need only be sufficient to authorize the issuing magistrate to conclude that there is a "fair probability" that the evidence will be found in the location specified. *State v. Stephens*, supra. Given the nature of the crime alleged to have been perpetrated by appellee and the legally recognized characteristics of the disease asserted to have been contracted as a result thereof, a statement that the crime occurred "within the past two months" would authorize a common-sense conclusion that there is a fair probability that a test of appellee's body would produce evidence that the disease was still present in his body, or had been present during the relevant time period.

4. " 'A magistrate's determination of probable cause should be paid great deference by reviewing courts.' [Cit.] And, in cases where the demonstration of probable cause in a warrant is doubtful or marginal, 'the resolution . . . should be largely determined by the preference to be accorded to warrants.' [Cits.]" *Thomas v. State*, supra at 483. " ' "A grudging or negative attitude by reviewing courts toward warrants," [cit.], is inconsistent both with the desire to encourage use of the warrant process by police officers and with the recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case. [Cit.] A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.' [Cit.] Utilizing this standard of review, . . . we find that the information, viewed as a whole, provided a substantial basis for the magistrate's finding of probable cause to believe that [evidence] was located [within] the [body of appellee.]" *Borders v. State*, 173 Ga. App. 110, 111-112 (325 SE2d 626) (1984). The trial court erred in granting appellee's motion to suppress that evidence.

*Judgment reversed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 4, 1985.

*Timothy G. Madison, District Attorney*, for appellant.

*William Rhymer*, for appellee.