A95A0492. JACKSON v. THE STATE.
(458 SE2d 153)

ANDREWS, Judge.

Jackson appeals from the judgment entered on a jury verdict finding him guilty of burglary. He challenges the sufficiency of the evidence and the trial court's action on various motions, evidentiary issues, and jury charges. Because we find no basis for reversal under any of the enumerations of error, we affirm the judgment.

Evidence showed that a house in Fayette County was burglarized sometime between 11:45 a.m. and 1:00 p.m. on July 26, 1993 while the residents were not at home. There were no witnesses to the burglary. At about 1:30 p.m. on the same day, Jackson and two other men were arrested in an adjacent county by a Georgia Bureau of Investigation

(GBI) agent and initially charged with possession of stolen goods.

The agent, who had no knowledge of the recent burglary at the time of the arrests, observed Jackson and Lewis in a car backed up near the door of a closed store. As the agent passed by in his unmarked car, he saw Jackson, who was seated in the driver's seat, pass something to a third man, Lovett, who was standing next to the car. The agent testified that, because of the location of the car in front of the closed store, and, because the area was known for illegal drug sales, his suspicions were aroused, and he decided to investigate to determine if any illegal drug activity was afoot.

Upon approaching the car and identifying himself as a GBI agent, he saw Jackson reach down to pull something from the floorboard of the car. Thinking that Jackson might be reaching for a weapon, the agent drew his service weapon and approached Jackson on the driver's side of the car. From this vantage point, the agent saw a pillowcase opened at the top on the floorboard of the car next to Jackson's feet. The agent saw an open book of checks at the top of the pillowcase along with assorted jewelry. Jackson had two passports in his hand, which he threw down when the agent approached.

Jackson and the two other men identified themselves at the agent's request, and, when asked what they were doing there, all three responded that they were just sitting there doing nothing. When asked about the passports, Jackson said they were not his. When asked to explain the pillowcase in the car containing the checkbook and the jewelry, Jackson and Lewis responded that they did not know anything about it and that it did not belong to them. The names on the checks observed by the agent did not correspond with Jackson, Lewis, or Lovett.

Based on their responses to his questions, and on his observation of the goods in the car, the agent arrested Jackson and the other two men for apparent possession of stolen goods. After they were placed under arrest and given their *Miranda* rights, Lovett volunteered that there were TVs, VCRs, and guns in the trunk of the car. A subsequent phone call to the persons named on the checks and passports found in the car revealed that the residence of these persons had been burglarized about an hour or two earlier. Jackson, Lewis and Lovett were charged with the burglary. Lovett pled guilty, and Jackson and Lewis were subsequently tried as co-defendants and convicted.

At trial, a resident of the burglarized house testified and identified the checks, passports, jewelry, and other items subsequently found in the trunk of the car as property stolen in the burglary. Jackson testified that he was not involved in the burglary. He said that Lovett told him about the stolen property in his car just moments before the GBI agent arrived. Jackson explained that, earlier in the day, he had allowed Lovett to use his car for an errand, and that,

while he was not present, Lovett placed the stolen property in his car without his knowledge. Lovett, who had already pled guilty to the burglary, testified as a witness for Jackson. Lovett claimed that he acted alone when he burglarized the house and stole the property, and that he put the stolen property in Jackson's car without Jackson's knowledge.

1. Jackson claims the evidence was insufficient to support the convictions.

The evidence was sufficient to show that Jackson was in possession of the goods stolen in the burglary about an hour before they were found in his car, even though there was also evidence that Lovett had equal access to the car. See *Knox v. State*, 216 Ga. App. 90, 92 (453 SE2d 120) (1995); *Cannon v. State*, 211 Ga. App. 835, 836 (440 SE2d 723) (1994). Although the evidence was circumstantial, evidence of Jackson's unexplained possession and concealment of goods stolen in the burglary, which had occurred an hour or two prior to his arrest, was sufficient to exclude any reasonable hypothesis save that of guilt. See *Moore v. State*, 202 Ga. App. 476, 478 (414 SE2d 705) (1992). Although Jackson presented evidence to the contrary, it was the duty of the jury to determine the credibility of witnesses and resolve conflicts in the evidence. *Davis v. State*, 203 Ga. App. 227, 228 (416 SE2d 771) (1992). There was sufficient evidence for the jury to find Jackson guilty beyond a reasonable doubt, and the trial court did not err by denying his motion for a directed verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. We find no error in the trial court's denial of Jackson's motion to suppress evidence of the burglary discovered after the GBI agent's investigatory stop and subsequent arrest of Jackson.

On appeal, Jackson's sole argument is that the GBI agent had no basis for the initial investigatory stop, which led to the subsequent arrest and search. Given the physical location of Jackson's car, which was backed up in front of a closed store, and given the apparent transaction the agent observed between Jackson and Lovett in an area known for illegal drug sales, the agent articulated a reasonable suspicion that illegal drug activity might be afoot. This was sufficient to stop Jackson, Lewis, and Lovett to investigate their activities. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968). Thereafter, the response given to the agent's questions, and his observations at the scene, were sufficient to give the agent probable cause for the arrest and search. *Durden v. State*, 199 Ga. App. 397, 398-399 (405 SE2d 50) (1991).

The trial court's findings as to the motion to suppress were supported by the record, not clearly erroneous, and, therefore, must be accepted on appeal as correct. *Bryan v. State*, 197 Ga. App. 207, 208 (398 SE2d 230) (1990).

3. Jackson claims that the trial court erroneously refused his request for an in camera inspection of the State's file, and erroneously refused to seal a copy of the file for review on appeal. See *Tribble v. State*, 248 Ga. 274 (280 SE2d 352) (1981).

The record shows that Jackson moved for the trial court "to conduct an in camera inspection of the District Attorney's file" and that "a copy of the State's file be sealed . . . for possible appellate review." Subsequently, the trial court entered an order stating that it had conducted an in camera inspection of the State's file in the case, and that nothing exculpatory was found in the file. Although Jackson argued prior to trial that the trial court failed to inspect the State's entire file in the case, there is nothing in the record showing that the trial court failed to inspect the State's file as requested.

As to the contention that the trial court failed to preserve the inspected file for appellate review, Jackson has not demonstrated any harm by pointing out what material he claims he was denied access to and how the suppression of this material prejudiced his defense. *Williams v. State*, 251 Ga. 749, 788-789 (312 SE2d 40) (1983).

Accordingly, we find no merit in these allegations.

4. As part of its case, the State introduced similar transaction evidence showing that Jackson had been convicted of four prior burglaries. Jackson contends on various grounds that this evidence was erroneously admitted.

(a) Jackson asserts that the four prior burglaries were not sufficiently similar to the present burglary so that proof of the prior burglaries tended to prove his participation in the present burglary. See *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991).

After the State provided Jackson with notice that it intended to introduce the similar transaction evidence, the trial court conducted a pre-trial hearing at which the State made an affirmative showing establishing the admissibility of the prior offenses. Although Jackson made a lack of similarity objection at the hearing, he waived this ground by failing to make this objection when the similar transaction evidence was introduced at trial. *Hunter v. State*, 202 Ga. App. 195, 197-198 (413 SE2d 526) (1991). Jackson's objection to lack of similarity raised after the State had rested its case was too late. *Curtis v. State*, 212 Ga. App. 237, 239 (441 SE2d 776) (1994); *Hunter*, supra. "[I]t is well-settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection. In this state it is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which might have been raised." (Citations and punctuation omitted.) *Curtis*, supra at 239.

Nevertheless, we have reviewed the similar transaction evidence and find that the prior offenses were sufficiently similar to warrant

their admission.

(b) Jackson contends that the State failed to comply with USCR 31.3 (B) because a copy of the convictions was not attached to the notice of the State's intention to present evidence of similar transactions.

Although the State was not in technical compliance with the rule, which requires that "[c]opies of accusations or indictments, if any, and guilty pleas or verdicts, if any, shall be attached to the notice," the notice did inform Jackson with respect to each burglary, the county in which it was prosecuted, the date of the offense, and the name of the victim. The purpose of the rule is to provide the defendant with fair and adequate notice of the listed transactions so that questions of admissibility may be raised and addressed prior to trial. *Sweatman v. State*, 181 Ga. App. 474 (352 SE2d 796) (1987). Jackson does not claim that he lacked adequate notice of the similar transactions. Since there was substantial compliance with the rule, and Jackson has made no claim that he was prejudiced by the State's failure to fully comply, any error was harmless. Id.; *Todd v. State*, 189 Ga. App. 538, 539 (376 SE2d 917) (1988).

(c) Jackson argues that none of the similar transaction evidence should have been admitted because the State relied on hearsay to establish all four prior burglaries.

The State relied on the testimony of an investigator with the Spalding County Sheriff's Department to establish the similarity of all four prior offenses. Since the investigator actually investigated and had personal knowledge of three of the four burglaries, his testimony as to those three offenses was not hearsay. See *Jackson v. State*, 205 Ga. App. 827, 828 (424 SE2d 6) (1992); compare *Bowdry v. State*, 211 Ga. App. 626 (440 SE2d 59) (1994). But the investigator admitted during the similar transaction hearing that he did not investigate the fourth prior burglary and had no personal knowledge about it. The State relied solely on this hearsay testimony to prove the similarity of the fourth burglary. Since the hearsay had no probative value, the similar transaction evidence as to this burglary was erroneously admitted. *Bowdry*, supra.

Nevertheless, since the fourth burglary occurred at about the same time and closely resembled the three other properly admitted prior burglaries, we find it highly probable that the erroneous admission of hearsay testimony regarding one of four similar prior offenses did not contribute to the guilty verdict. *Wheat v. State*, 205 Ga. App. 388, 389 (422 SE2d 559) (1992); *Bowdry*, supra. Accordingly, the error was harmless, and the trial court properly denied Jackson's motion for a mistrial.

(d) The introduction of the similar transaction evidence did not violate his right to due process, a fair trial, and presumption of inno-

cence, as contended by Jackson.

5. Jackson contends there was a fatal variance between the charging terms of the indictment and the facts proved at trial.

The indictment charged that the burglary occurred at the dwelling house of "Bobby Jackson, located at 1892 Highway 92 South. . . ." The State produced evidence showing that the burglary occurred at the residence of Bobby Jackson located at 1889 Highway 92 South, and that Bobby Jackson did not own another residence at any other address.

The variance between the indictment and the proof did not misinform or mislead Jackson in any manner that surprised him at trial or impaired his defense. Nor can he be subjected to another prosecution for the same offense. Accordingly, there was no fatal variance between the allegations and the proof. *DePalma v. State*, 225 Ga. 465, 469 (169 SE2d 801) (1969). The trial court properly denied Jackson's motion for a directed verdict on this ground.

6. Jackson claims that, after the State attempted to discredit a defense investigator on cross-examination by asking who paid him, the trial court erroneously refused to allow him to rehabilitate the witness on re-direct by showing that the investigator was paid by the State under a court order.

When asked on cross-examination who paid his bill, the investigator said he was paid by the investigating firm he worked for, and that he was not sure who paid the firm's bill. On re-direct, the trial judge interrupted defense counsel's attempt to have the investigator identify the court order authorizing State payment by commenting that he did not believe the order was relevant. Without objection, defense counsel directed the witness to come down and ended the examination. Assuming, without deciding, that the State's cross-examination made the source of payment for the investigation relevant, defense counsel did not object in the trial court that his examination of the witness had been improperly curtailed, so we will not address this claim on appeal. *Tanthongsack v. State*, 265 Ga. 88 (453 SE2d 468) (1995).

7. Jackson contends that the trial court erroneously charged the jury on the essential elements of the offense, on the separate application of the facts and law to Jackson and his co-defendant, Lewis, and on its charge on equal access.

(a) The trial court's instructions fully and accurately informed the jury of the essential elements of the offense charged in the indictment. There is no merit to this enumeration.

(b) As the charge pertained to Jackson and his co-defendant, Jackson claims the trial court erred by charging the jury that: "If . . . you should entertain a reasonable doubt as to the guilt of these defendants, it would be your duty to acquit the defendants. On the

other hand, if you believe from the entire evidence that the defendants or either of them are guilty beyond a reasonable doubt, it would be your duty to convict." Specifically, Jackson contends that the use of the phrase "the defendants or either of them," the court's use of the plural "defendants," and the failure of the court to instruct the jury that conviction of one defendant did not necessitate conviction of the other, misled the jury as to their duty to consider the charges against each co-defendant separately and requires reversal of his conviction.

"[T]he better practice would be for the trial court to give a separate instruction detailing the jury's duty to consider each charge in the indictment against each defendant separately and reminding the jury that the guilt of one defendant did not require the return of a similar verdict against the co-defendant. . . ." *George v. State*, 260 Ga. 809, 811 (400 SE2d 911) (1991). Here, the judge specifically instructed the jury that there were two separate defendants charged with the same offense under two separate indictments, and that they had a duty to consider the evidence and law and apply them separately to each defendant and reach a separate verdict as to each defendant. The trial court also cautioned the jury that even if the plural "defendants" was used in portions of the charge, they should recall their duty to consider each defendant separately.

Considering the charge as a whole, it was complete and accurate and did not confuse the jury in their consideration of the charges against the co-defendants. *George*, supra; *Ledbetter v. State*, 202 Ga. App. 524 (414 SE2d 737) (1992).

(c) The trial court's charge substantially and adequately covered the principle of equal access as it applied in the automobile context in this case. The charge adequately informed the jury that evidence showing that a person or persons, other than the owner or driver of the car, had equal access to contraband found in the car may or will, depending on the evidence, overcome the presumption that the contraband was exclusively possessed by the owner or driver. *Dickerson v. State*, 200 Ga. App. 366, 367 (408 SE2d 137) (1991); see *Jones v. State*, 200 Ga. App. 519, 520-521 (408 SE2d 823) (1991). Failure to give the specific charge requested was not error.

8. Jackson claims that, during the presentence hearing, the trial court improperly considered convictions for sentencing purposes which were not his convictions.

The State presented certified copies of the convictions at issue, and the trial court noted that the record reflected that the convictions were included as recidivist counts to indictments against Jackson which were admitted as similar transaction evidence during the trial. Although defense counsel stated that his client was not the same Jackson named on the convictions, no evidence was presented to sup-

port this claim. In the absence of any evidence to contradict the record, the trial court properly considered the documents introduced by the State as prior criminal convictions of Jackson in aggravation of punishment. OCGA § 17-10-2 (a); see *Banks v. State*, 201 Ga. App. 266, 268-269 (410 SE2d 818) (1991).

*Judgment affirmed. McMurray, P. J., concurs. Blackburn, J., concurs in judgment only.*

DECIDED MAY 25, 1995.

*Steven L. Harris*, for appellant.
*Johnnie L. Caldwell, Jr.*, District Attorney, *Randall K. Coggin, Assistant District Attorney*, for appellee.