**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Harold Paul WILLIAMS, Defendant–**
**Appellant.**

No. 02–1663.

United States Court of Appeals,
Sixth Circuit.

Sept. 18, 2003.

David J. Portelli, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Craig A. Daly, Detroit, MI, for Defendant–Appellant.

Before NELSON, GIBBONS, and SUTTON, Circuit Judges.

## ORDER

Harold Paul Williams, represented by counsel, appeals from his judgment of conviction and sentence. The parties have expressly waived oral argument, and this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

By way of background, this case arose out of the execution of a search warrant on September 23, 1996, at Williams's residence located at 2850 Oakman, Detroit Michigan, (search warrant), and the execution of a warrant for Williams's arrest served at his subsequent residence located at 25550 Catalina, Southfield, Michigan (arrest warrant). The trial court denied Williams's pre-trial motions to suppress evidence seized during the execution of both warrants.

Subsequently, in 2002, a jury convicted Williams of aiding and abetting the possession of stolen mail in violation of 18 U.S.C. §§ 1708 and 2, aiding and abetting the production of false identification in violation of 18 U.S.C. §§ 1028(a)(1) and 2, and two counts of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g). The district court sentenced Williams to 121 months of imprisonment.

In his timely appeal, Williams essentially argues that: 1) the search warrant was not supported by probable cause; 2) the warrantless search of Williams's Southfield residence and seizure of firearms were unlawful; 3) Williams's § 922(g) convictions should be vacated because he was not a "convicted felon;" and 4) the trial court violated Williams's right to a fair trial by improperly instructing the jury.

■ Upon review, we conclude that the district court properly denied Williams's pre-trial motion to suppress evidence seized during the execution of the search warrant. A decision on a motion to suppress evidence is reviewed under two separate standards. First, this court will uphold a district court's factual findings unless they are clearly erroneous. Second, review of the district court's legal determination as to probable cause is de novo. *See United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir.1999). Here, the totality of the circumstances supports the finding that the search warrant was supported by probable cause of criminal activity. The affidavit presented in support of the application named two individuals who, earlier that year, had connected Williams to a stolen check organization. The individuals informed agents that Williams was involved in a scheme to steal checks, to purchase electronic equipment and other items with the stolen checks, and to return the items for cash. Postal inspectors corroborated this information by conducting a "trash pull" of Williams's curb-side garbage. The inspectors discovered a carbon of a stolen check and a receipt for cash for a return of a purchased camera. Moreover, contrary to Williams's argument, he did not have any reasonable expectation of privacy in his curb-side trash. *See California v. Greenwood*, 486 U.S. 35, 37, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (the Fourth Amendment does not bar the warrantless search and seizure of trash put out for collection beyond the curtilage of the home). Hence, the district court properly denied Williams's motion to suppress the seized evidence.

■ We also conclude that, even if the affidavit had not provided probable cause, the "good faith" exception would apply in this case. For the good faith exception to apply, an officer must have had a reasonable, objective, and good faith belief that the search warrant was valid. *United States v. Leon*, 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As stated above, a review of the affidavit in this case clearly contains information that would indicate that Williams was in possession of stolen mail and that he was engaged in the production of false identification. The affidavit provided information concerning the identity of the alleged wrongdoer, his place of residence, and the type of criminal activity occurring at the identified location. Clearly the information set forth in the affidavit constitutes more than just a "bare bones" allegation of wrongdoing, and the search warrant issued based on the affidavit would support Postal Inspector Fluck's belief that evidence of wrongdoing existed on the premises to be searched. *See United States v. Williams*, 224 F.3d 530, 532–33 (6th Cir.2000).

■ The district court did not err when it upheld the seizure of firearms and ammunition found during the execution of the search warrant. Inspectors held a pre-execution briefing and learned that Williams had prior felony convictions. Later, during the execution of the search warrant, Williams informed the agents that a gun was in his upstairs bedroom closet. Inspectors went to the closet and found and seized a handgun. A total of seven firearms and ammunition were ultimately recovered. All but one of the guns were loaded. The seizure of these items

was proper because the inspectors knew that Williams and his live-in girlfriend resided in the house, and that both had prior felony convictions. *See Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

■ We also conclude that the district court properly denied Williams's motion to suppress evidence of firearms seized during the execution of Williams's arrest warrant. The inspectors were lawfully present at Williams's home to execute arrest warrants for him and his girlfriend. *See United States v. Wickizer*, 633 F.2d 900 (6th Cir.1980). During the execution of the search warrant, the inspectors conducted a security sweep of the residence. During the security sweep, inspectors advised Williams of his *Miranda* rights and asked if there were any weapons in the house. Williams eventually informed the officers of the presence of two weapons, a handgun in his bedroom closet and another gun in the kitchen cabinet. The inspectors seized the weapons and some ammunition. A postal inspector (Winters) testified that the inspectors conducted a security sweep, but that they did not conduct a "general search" of the residence. Williams impliedly consented to the search for and seizure of these items because he directed the inspectors to the weapons and the ammunition. *See United States v. Erwin*, 155 F.3d 818 (6th Cir.1998). Hence, the district court properly denied Williams's motion to suppress this evidence.

■ The district court properly declined to dismiss the felon in possession of firearms charges. In relevant part, § 922(g)(1) prohibits firearm possession by convicted felons who have not had their right to carry firearms restored in some fashion. If a person's civil rights have been restored with respect to a particular conviction, that conviction may not be used to support a conviction under § 922(g) un-

less the restoration of civil rights specifically restricts the possession of firearms. 18 U.S.C. § 921(a)(20). "Under § 921(a)(20), 'the law of the State of conviction, not federal law, determines the restoration of civil rights as a rule.'" *United States v. Campbell*, 256 F.3d 381, 391 (6th Cir.) (quoting *Caron v. United States*, 524 U.S. 308, 316, 118 S.Ct. 2007, 141 L.Ed.2d 303 (1998)), *cert. denied*, 534 U.S. 1032, 122 S.Ct. 572, 151 L.Ed.2d 444 (2001).

A person who has been convicted of a crime in Michigan will generally have his civil rights restored upon completion of his sentence and any period of probation or parole. *See id.* at 391; *Hampton v. United States*, 191 F.3d 695, 699–702 (6th Cir. 1999). However, even after a person's civil rights have been restored, Michigan law restricts a convicted person's right to possess firearms for a period of time after the sentence imposed for a particular crime has been served. Mich. Comp. Laws Ann. § 750.224f (West Group 2001). "A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in [Michigan] until" the expiration of five years after all fines have been paid, all terms of imprisonment have been served, and all conditions of probation or parole have been successfully completed. Mich. Comp. Laws Ann. § 750.224f(2)(a) (West Group 2001). A specified felony is defined as a felony, one of the elements of which is "the use, attempted use, or threatened use of physical force against the person or property of another. . . ." Mich. Comp. Laws Ann. § 750.224f(6)(i) (West Group 2001).

The record reflects that Williams is under state firearm restrictions for two reasons. First, he absconded from probation and thereby tolled the running of his five-year probationary period. *See People v.*

*Ritter,* 186 Mich.App. 701, 464 N.W.2d 919 (1991). Hence, Williams did not "successfully complete all the conditions of his probation" as required.

Second, Williams conceded that his most recent felony conviction for carrying a concealed weapon is a "specified felony," and he does not dispute that he failed to obtain a written order from the local gun board to have his rights restored. Such an order was a statutory condition to restoration of his firearm rights. *See* Mich. Comp. Laws Ann. §§ 750.224f and 28.424. Because Williams was clearly under a state firearms restriction, the district court properly declined to dismiss the felon in possession charges.

█ The district court properly instructed the jury in this case. Jury instructions are reviewed as a whole to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in its decision. *Innes v. Howell Corp.,* 76 F.3d 702, 713–14 (6th Cir.1996). First, the district court properly instructed the jury as to "deliberate ignorance" because Williams denied any knowledge of the crimes that were occurring at his residence, even though the evidence of his crimes was "literally strewn" about his Detroit home and guns were plainly visible in the bedroom closet and kitchen cupboard of his Southfield home. Second, the district court properly instructed the jury that an element of the felon-in-possession charge is "that the firearm had previously been shipped or transported in interstate . or foreign commerce." *See, e.g., United States v. Vincent,* 20 F.3d 229, 236 (6th Cir.1994) (holding that the mere fact that a defendant possessed a firearm that was manufactured in a different state establishes a sufficient nexus with interstate commerce to support the defendant's conviction for possession of a firearm by a felon). Likewise, the court also properly instructed the jury that the government need not prove that Williams knew that it was illegal to own a firearm, that Williams knew that the firearm had traveled in interstate commerce, or that Williams had "owned" the gun. *See United States v. Gros,* 824 F.2d 1487, 1494–95 (6th Cir. 1987); *United States v. Hatfield,* 815 F.2d 1068, 1072 (6th Cir.1987).

█ Finally, we conclude that the district court did not err when it declined to give Williams's requested instruction. Williams requested that the court instruct the jury that it "should consider how and when the statement was made, as well as all the other evidence in the case." It is noted that Williams waived this issue by failing to renew his objection after the jury had been instructed. *United States v. Johnson,* 62 F.3d 849, 850 (6th Cir.1995). As such, the instruction is reviewed for plain error. *United States v. Barrow,* 118 F.3d 482, 493 (6th Cir.1997). First, a review of the jury instructions reflects that the district court did not plainly err when it declined to provide the requested instruction. The requested instruction covered the same ground as did the district court's other instruction. The court had clearly instructed the jury to consider all the circumstances surrounding witness testimony and to give such testimony "reasonable and fair construction." Second, the voluntariness of Williams's statement was not an issue before or during the trial. Hence, an instruction on the voluntariness of Williams's statement was not required. *United States v. McLernon,* 746 F.2d 1098 (6th Cir.1984). Hence, the district court did not plainly err when it declined to give the requested instruction.

Accordingly, we affirm the district court's judgment.