STATE OF NORTH CAROLINA v. ROBERT CHARLES SINAPI, DEFENDANT

No. COA03-821

(Filed 4 May 2004)

**Search and Seizure— basis for warrant—trash pick-up—insufficient connection to house**

The trial court correctly suppressed evidence of marijuana seized from defendant's residence where the seizure was based on a search warrant supported by an affidavit stating that marijuana had been found in a trash bag near the curb in defendant's front yard. The affidavit did not contain sufficient facts and circumstances linking the bag to defendant's residence and failed to establish probable cause for a warrant to search the house.

Judge McCULLOUGH dissenting.

Appeal by the State from order entered 13 March 2003 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 31 March 2004.

*Attorney General Roy Cooper, by Assistant Attorney General William B. Crumpler, for the State.*

*John T. Hall for defendant-appellee.*

ELMORE, Judge.

In this appeal, the State contends the trial court erred by allowing defendant Robert Charles Sinapi's pretrial motion to suppress evi-

dence obtained from a search of defendant's home pursuant to a search warrant. The sole issue for our determination is whether the affidavit presented to the magistrate as part of the search warrant application provided a sufficient showing of probable cause to support the magistrate's finding of probable cause and issuance of the warrant. For the reasons stated herein, we conclude that it did not and therefore affirm the trial court's order allowing defendant's motion to suppress.

The record reveals that on 30 September 2002, during the course of investigating defendant for possible violations of the North Carolina Controlled Substances Act, Detective J.G. Hobby (Detective Hobby) of the Raleigh Police Department applied to a Wake County magistrate for a warrant to search a residence located at 3300 Pinecrest Drive in Raleigh, North Carolina for controlled substances and other evidence of illegal drug activities. As part of the search warrant application pursuant to N.C. Gen. Stat. § 15A-244(3), Detective Hobby prepared an affidavit setting forth the facts which he contended established probable cause to believe that these items would be found on the premises. Detective Hobby's affidavit recounted his extensive training and experience in conducting narcotics investigations and further provided as follows:

> On 9-05-02, I was assigned to follow-up on a drug case investigated by Raleigh Police Officer V.R. Debonis involving a heroin overdose. The investigation advised that the heroin was purchased from [defendant]. I was able to identify [defendant] through [the] NC Division of Motor Vehicles records and learned that he resides at 3300 Pinecrest Drive, Raleigh, NC 27609. A criminal records check reveals that [defendant] has had prior arrests for possession of marijuana and methaqualone. On 9-26-02 at approximately [8 a.m.], Detective J.D. Cherry and I performed a trash pick-up at 3300 Pinecrest Drive. This trash pick-up was made during the normal trash day and time. A single, white plastic garbage bag was recovered from the front yard/curb line area at 3300 Pinecrest Drive, beside of [sic] the driveway. Inside of [sic] the garbage bag I located eight marijuana plants. The plants appeared to be somewhat dried up and wilted. The marijuana weighed approximately 5½ ounces. The marijuana was field tested with a positive result for marijuana. Based on my training and experience, this activity is consistent with a possible marijuana grow [sic] operation and illegal drug sales.

Wake County Real Estate records indicate that [defendant] owns the residence at 3300 Pinecrest Drive. NC DMV records indicate that [defendant] resides at this address.

This investigation has included a recent drug investigation where [defendant] is believed to be involved in the sell/delivery [sic] of an illicit drug, heroin. Criminal records indicate that he has prior arrests for possession of marijuana and methaqualone. An abundance of marijuana was recovered as a result of the trash pick-up at the residence. Based on the facts described above and my training and experience, I believe that there is probable cause to believe that the items to be seized, controlled substances in violation of G.S. 90-95 and other items herein, are in the premises and on the person to be searched, as described herein. I hereby request that a search warrant be issued directing a search for and seizure of the items in question.

The magistrate thereafter issued a search warrant for the premises at 3300 Pinecrest Drive, which was executed by Detective Hobby and other police officers on 1 October 2002. Defendant was present when the officers entered the residence. During the search, controlled substances, including heroin, cocaine, and marijuana, and drug paraphernalia were found in the residence. Defendant was arrested following the search and thereafter indicted on 6 January 2003 on one count each of manufacturing marijuana, trafficking in marijuana by possession, trafficking in heroin by possession, trafficking in cocaine by possession, and maintaining a dwelling for keeping and selling controlled substances.

On or about 27 January 2003, defendant filed a pretrial motion to suppress all evidence seized during the search of the residence. Defendant's motion was heard on 5 February 2003 by the Honorable Howard E. Manning, Jr. At the suppression hearing, the State introduced the search warrant and application for the warrant, including Detective Hobby's accompanying affidavit, into evidence. The State also offered additional evidence through the testimony of Detective Hobby. Defendant offered no evidence at the hearing.

Detective Hobby's testimony was consistent with the affidavit he prepared as part of the search warrant application for 3300 Pinecrest Drive, although his hearing testimony contained additional details regarding the trash bag pick-up he and Detective Cherry executed in front of the residence. Detective Hobby testified that the trash bag was situated in the yard at 3300 Pinecrest Drive near the curb,

"approximately three to four feet from the driveway at the corner of the lot, . . . approximately four to five feet off the roadway." Detective Hobby testified that at the time he picked up the trash bag, the garbage collection truck was in the neighborhood but had not yet reached Pinecrest Drive. On cross examination, Detective Hobby acknowledged that Raleigh has backyard garbage pick-up and that neither he nor Detective Cherry spoke to any of the sanitation workers who were then in the area or otherwise determined how the trash bag came to be situated where it was found. Detective Hobby testified that in addition to the marijuana, the trash bag contained "normal kitchen garbage" and that no documents connecting the trash bag to any person or address were found therein.

After hearing argument from the assistant district attorney and from defendant's counsel, Judge Manning orally granted defendant's motion to suppress all evidence obtained as a result of the search of the residence at 3300 Pinecrest Drive. On 13 March 2003, Judge Manning entered a written order allowing the motion to suppress, which contained extensive findings of fact and the following conclusions of law:

1. The discovery of marijuana in a garbage bag located near the curb of the street and adjacent to the driveway at 3300 Pinecrest Drive on a normal garbage pick up day without any documentation linking the bag to the residence or the defendant and without any showing as to how, when and by whom it was placed along the curb, does not implicate the residence located at 3300 Pinecrest Drive and provides no reasonable basis to believe that controlled substances would be found therein or on the defendant.

2. The affidavit portion of the search warrant herein did not provide sufficient facts and circumstances to establish probable cause to believe that the items sought were located upon the premises of 3300 Pinecrest Drive.

3. The resulting search violated the rights of the defendant afforded him under Chapter 15A of the North Carolina General Statutes, the Constitution of North Carolina and the Constitution of the United States.

4. The evidence obtained as a result of the search conducted on September 30, 2002 at 3300 Pinecrest Drive, together with the fruits of that search, are inadmissible in the trial of the defendant.

From this order granting defendant's motion to suppress, the State appeals, asserting that the trial court erred by concluding that Detective Hobby's affidavit supporting his search warrant application failed to establish probable cause.

"Our review of a ruling on a motion to suppress is limited to whether the trial court's findings are supported by competent evidence and whether those findings support its ultimate conclusions." *State v. McHone,* 158 N.C. App. 117, 120, 580 S.E.2d 80, 83 (2003). In the present case, the State has not challenged any of the trial court's findings of fact; as such, they are binding on appeal. *State v. Pendleton,* 339 N.C. 379, 389, 451 S.E.2d 274, 280 (1994), *cert. denied,* 515 U.S. 1121, 132 L. Ed. 2d 280 (1995). Accordingly, the sole issue for our determination is whether the trial court's conclusions of law are supported by these findings.

In *McHone,* this Court discussed the requirement that a search warrant application be supported by an affidavit establishing probable cause, stating in pertinent part as follows:

> A valid search warrant application must contain "[a]llegations of fact supporting the statement. The statements must be supported by one or more affidavits *particularly setting forth the facts and circumstances establishing probable cause* to believe that the items are in the places or in the possession of the individuals to be searched." N.C. Gen. Stat. § 15A-244(2) (2001) (emphasis added). Although the affidavit is not required to contain all evidentiary details, it should contain those facts material and essential to the case to support the finding of probable cause. *State v. Flowers,* 12 N.C. App. 487, 183 S.E.2d 820, *cert. denied,* 279 N.C. 728, 184 S.E.2d 885 (1971). . . . The clear purpose of these requirements for affidavits supporting search warrants is to allow a magistrate or other judicial official to make an independent determination as to whether probable cause exists for the issuance of the warrant under N.C. Gen. Stat. § 15A-245(b) (2001). N.C. Gen. Stat. § 15A-245(a) requires that a judicial official may consider only information contained in the affidavit, unless such information appears in the record or upon the face of the warrant.

*McHone,* at 120, 580 S.E.2d at 83. The supporting affidavit is sufficient "if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." *State v. Ledbetter,* 120

N.C. App. 117, 121, 461 S.E.2d 341, 344 (1995) (quoting *State v. Arrington*, 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984)).

Our Supreme Court has adopted the "totality-of-the-circumstances" test established by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983), for determining whether information properly before the magistrate as part of a search warrant application provides a sufficient basis for finding probable cause. *State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984). On review, this Court must pay great deference to and sustain the magistrate's determination of probable cause "if there existed a substantial basis for the magistrate to conclude that articles searched for were probably present." *State v. Hunt*, 150 N.C. App. 101, 105, 562 S.E.2d 597, 600 (2002).

In the present case, we first note and reject the State's assertion that the trial court's review of the magistrate's decision to issue the search warrant was not properly limited to a determination of whether the magistrate had a substantial basis to find probable cause, but instead constituted a *de novo* review of the evidence. Because we conclude that Detective Hobby's affidavit fails to set forth a sufficient connection between the trash bag at issue and either the residence at 3300 Pinecrest Drive or defendant such that the magistrate could properly find the "substantial basis" necessary for probable cause, we fail to discern any error in the standard of review employed by the trial court.

Our review of the transcript indicates that the bulk of the argument at the suppression hearing focused on whether the facts set forth in Detective Hobby's affidavit sufficiently linked the trash bag to defendant or his residence, such that a substantial basis existed under North Carolina law for the magistrate to find probable cause and issue the search warrant. It was undisputed that defendant had drug convictions which were several years old, that defendant was the subject of a current drug investigation, and that defendant was the record owner of the residence located at 3300 Pinecrest Drive. The State essentially argued that these facts, combined with the presence of a single trash bag containing eight marijuana plants in the front yard of 3300 Pinecrest Drive near the curb on a normal garbage collection day, provided the requisite "substantial basis" upon which the magistrate could properly find probable cause and issue the search warrant. Defendant, however, maintained that because Detective Hobby's affidavit failed to allege (1) that any documents

were found inside the trash bag linking it with either 3300 Pinecrest Drive or defendant, or (2) that Detective Hobby observed defendant, sanitation workers, or anyone else place the trash bag where it was ultimately found, or otherwise determined how it came to be there, the affidavit was insufficient to connect the trash bag to defendant or his residence in a manner which would allow the magistrate to properly find probable cause under existing North Carolina law.[1]

At the conclusion of the suppression hearing, Judge Manning framed the issue as follows:

> The test is very simple. The test is, is that having a garbage bag out in somebody's yard, in your yard on the day in question without . . . asking the garbage men to go get it, or even seeing the garbage man come out or seeing the Defendant or seeing somebody in that house put that garbage bag out there, is the garbage bag standing alone enough?

Judge Manning then ruled as follows from the bench:

> . . . . I've thought about it. And I do not believe that that is enough.

> So the motion to suppress is allowed. . . . I don't believe that it is enough, standing alone, without any—anything else, that the garbage bag in the yard on garbage day without the officers seeing some contact between somebody in the house and the garbage come out, or the garbage man going and getting it and giving it to him. If that was there, there would be probable cause, but without that link, I don't think you have probable cause . . . .

On appeal, the State asserts that despite this lack of any evidence directly linking the trash bag to either 3300 Pinecrest Drive or defendant, the totality of the circumstances as set forth in Detective Hobby's affidavit allowed the magistrate to reasonably infer that the marijuana found therein came from inside the residence, and this inference in turn provided a substantial basis for the magistrate to find probable cause that further contraband would be found on the premises. We disagree.

North Carolina appellate courts have previously upheld the validity of search warrants issued where, as here, part of the totality of the

---

1. The order allowing defendant's motion to suppress contained extensive findings of fact which were consistent with the facts as argued by the parties at the suppression hearing and set forth herein. As noted above, the State has not excepted to any of the trial court's findings of fact.

circumstances implicating the premises to be searched included illegal drug residue found in garbage collected from on or near the premises. *See State v. Hauser*, 342 N.C. 382, 464 S.E.2d 443 (1995); *State v. Washington*, 134 N.C. App. 479, 518 S.E.2d 14 (1999). We recognize that in both *Hauser* and *Washington*, the only issue decided on the merits was whether the warrantless search of the garbage *itself* violated the Fourth Amendment; in each case, the appellate court held that it did not, and declined for technical reasons to address the specific issue of whether the drug residue found therein provided the substantial basis for probable cause necessary to support the search warrants subsequently issued for each *premises*. However, given the fact-intensive nature of the issue presented by the instant appeal, we find the circumstances under which the police retrieved the garbage in *Hauser* and *Washington* instructive in our analysis of the present case.

We find it significant that in both *Hauser* and *Washington*, the circumstances surrounding each garbage retrieval provided a much more substantial link between the garbage collected and the premises for which a search warrant was sought than is present in the case *sub judice*. For example, in *Hauser*, the police obtained a search warrant for the defendant's residence based on the presence of cocaine residue in garbage which, by pre-arrangement between the police and the local sanitation department, was collected from the defendant's back yard in the usual fashion by a sanitation worker who regularly serviced the neighborhood, separated from other garbage, and turned over to police. *Hauser*, 342 N.C. at 384, 464 S.E.2d at 445. In *Washington*, where the police obtained a search warrant for the defendant's apartment based on drug residue found inside two garbage bags removed from the apartment community dumpster, the garbage bags were retrieved from the dumpster by a police officer conducting surveillance on the defendant's apartment immediately after he observed a man matching the defendant's description emerge from the defendant's apartment carrying two white plastic garbage bags tied closed with yellow strips, deposit them in the dumpster, and return to the defendant's apartment. *Washington*, 134 N.C. App. at 481, 518 S.E.2d at 15.

In contrast to the scenarios described in *Hauser* and *Washington*, we hold in the present case that because Detective Hobby's affidavit in support of his search warrant application does not contain sufficient facts and circumstances linking the trash bag retrieved by Detective Hobby to 3300 Pinecrest Drive, it fails to establish a "sub-

stantial basis for the magistrate to conclude that articles searched for were probably present." *Hunt*, 150 N.C. App. at 105, 562 S.E.2d at 600. The only circumstances stated in the affidavit connecting the trash bag to the premises are that the trash bag was retrieved "during the normal trash day and time[]" and "from the front yard/curb line area at 3300 Pinecrest Drive, beside of [sic] the driveway." The affidavit does not state that any written documents were found in the trash bag connecting it with either defendant or his residence. The affidavit contains no assertions that Detective Hobby observed defendant or anyone else connected to the residence at 3300 Pinecrest Drive place the bag where it was found. The affidavit likewise fails to assert that Detective Hobby spoke with any of the sanitation workers he observed in the area on the morning of the trash pick-up to determine whether any of them had removed the trash bag from the back yard of 3300 Pinecrest Drive, or any of the surrounding residences, and placed it near the curb for later retrieval by the garbage truck, in keeping with the City of Raleigh's back-yard garbage pick-up service. In fact, Detective Hobby testified at the suppression hearing that none of these circumstances existed.

It is clear, both from our review of the suppression hearing transcript and from the findings of fact contained in the order allowing defendant's motion to suppress, that Judge Manning noted each of these circumstances in carefully considering the totality of the circumstances presented on these facts. Given the dearth of facts and circumstances connecting the trash bag containing contraband to the premises for which the search warrant was sought, we agree with the trial court's conclusion that Detective Hobby's search warrant application failed to provide the requisite "substantial basis" upon which the magistrate could properly find probable cause and issue the search warrant. Accordingly, we affirm the trial court's order allowing defendant's motion to suppress.

Affirmed.

Judge BRYANT concurs.

Judge McCULLOUGH dissents by separate opinion.

Judge McCULLOUGH dissenting:

The majority has concluded that the affidavit filed in support of a search warrant issued by a magistrate for the search of defendant's

residence lacked probable cause and therefore should not have been issued. From this conclusion, I respectfully dissent.

Evidence seized in violation of the United States Constitution or the North Carolina Constitution shall be suppressed. N.C. Gen. Stat. § 15A-974(1) (2003). Section 20 of Article I of the North Carolina Constitution should not be read to enlarge or expand such rights beyond those afforded by the Fourth Amendment. *State v. Garner*, 331 N.C. 491, 417 S.E.2d 502 (1992).

Probable cause is required for the issuance of a search warrant. The totality of the circumstances test has been adopted for determining probable cause. *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984).

In the case *sub judice* a detective with the Raleigh Police Department documented that defendant resided at a single-family residence, 3300 Pinecrest Drive in Raleigh. The detective reported that defendant had prior arrests for the possession of drugs (marijuana and methaqualone). The detective further stated that on the normal trash day and at the normal time he recovered a single, white plastic bag of trash from defendant's front yard at the curbline next to the driveway leading to defendant's house. Inside the bag were dried up marijuana plants. No documents with defendant's name were found in the trash nor did the detective see who placed the bag at this spot. Based on the discovery of marijuana in the trash pickup, the warrant in question was issued.

The trial court and the majority refused to find that this search warrant affidavit was adequate as there were no documents inside the trash bearing defendant's name nor did surveillance establish who placed the bag curbside. At the suppression hearing the trial court noted that in Raleigh the garbage collectors go behind the houses and place the trash curbside for later pickup. While the trial court noted that "[t]here were other garbage bags in front of other houses along Pinecrest Drive," the court refused to draw the inference that the bag in front of 3300 Pinecrest Drive implicated that residence without evidence along the lines set forth above. While it would have been the better practice for the police to determine from the garbage collectors where the target bag came from, operational security may on some occasions make that impractical.

In any event, I believe the trial court erred in not allowing the inference to be drawn that the trash bag implicates the residence

where it was located. I believe the magistrate was entitled to draw the inference that a single bag in front of a residence more likely than not emanated from that residence.

In *State v. Arrington,* our Supreme Court stated a search warrant affidavit is sufficient when it

> supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty. The facts set forth in an affidavit for a search warrant must be such that a reasonably discreet and prudent person would rely upon them before they will be held to provide probable cause justifying the issuance of a search warrant. A determination of probable cause is grounded in practical considerations.

*Arrington,* 311 N.C. at 636, 319 S.E.2d at 256-57 (citations omitted).

I believe the trial court improperly applied a *de novo* review to the warrant in question and did not give proper deference to the magistrate's determination of probable cause. *State v. Ledbetter,* 120 N.C. App. 117, 121-22, 461 S.E.2d 341, 344 (1995) (Great deference should be paid to determination of probable cause and the reviewing court is not to conduct *de novo* review of evidence.).

Numerous decisions note that "probable cause" is a common sense, practical determination and that reviewing courts should not take a grudging, negative attitude toward warrants. *See, e.g., State v. Riggs,* 328 N.C. 213, 400 S.E.2d 429 (1991). The issuing official is allowed to draw every reasonable inference from the information supplied by the affiant. *Id.*

Numerous cases can be found where search warrants were upheld when the affidavit was similar to the one here with there being no documents linking the defendant by name to the trash recovered nor was the property owner surveilled placing the trash curbside nor were the collectors interviewed.

In *Perkins v. State,* 197 Ga. App. 577, 398 S.E.2d 702 (1990), the Georgia Court of Appeals upheld a search warrant predicated on a tip from a concerned citizen, the defendant's prior criminal history and several trash seizures where drugs, drug records and paraphernalia were found. The trash was located curbside in front of the defend-

ant's residence, although the defendant was not observed placing the trash there, nor were any records bearing the defendant's name found in the trash. The defendant moved to suppress arguing that no one personally observed the defendant place the trash nor did the affidavit contain enough facts to establish an ownership connection between appellant and the trash searched.

In rejecting his arguments the Georgia Court stated:

"In determining whether probable cause supported issuance of a search warrant, a 'totality of the circumstances' test is employed. 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis . . . for conclud(ing)' that probable cause existed.' [Cit]" *Butler v. State*, 192 Ga. App. 710 (1) (386 S.E.2d 371) (1989). . . .

Reviewing all the circumstances set forth in the affidavits, we conclude that there was a substantial basis for the magistrate's determination of probable cause. The information provided by Craft, [the affiant] arising out of his official investigation, was sufficient to establish probable cause. *Caffo v. State*, 247 Ga. 751 (2)(b) (279 S.E.2d 678 (1981). In addition, the magistrate was entitled to rely on the officer's knowledge of appellant's past criminal conduct. *Id.* at 755. The affidavit indicated the existence of an ongoing scheme to sell drugs, consequently, we cannot say that the statements in the affidavit were so stale as to make it unlikely that illegal drugs would be found on the premises at the time of the issuance of the warrant. See *id.* at 755. Although not all of the recitations in the affidavits were entirely accurate and despite the lack of statements regarding personal observations of appellant and his criminal activity, on the whole the affidavits supported the finding of probable cause. See *Ayers*, supra at 248.

As to the connection between appellant and the trash, Craft stated that the trash was located at the curbside or at the roadway of the residences observed, and further stated the bases for connecting appellant to each of these residences, such as appellant's name on the lease of one residence, and the other residence being listed by appellant in connection with an auto accident together with a car registered to appellant located at that resi-

STATE v. SINAPI

[164 N.C. App. 56 (2004)]

dence. The Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection at the curb outside the home. *California v. Greenwood,* 486 U.S. 35 (108 S. Ct. 1625, 100 L. Ed. 2d 30) (1988). Utilizing the deferential standard of review appropriate for searches conducted pursuant to a search warrant, *State v. Morrow,* 175 Ga. App. 743(4) (334 S.E.2d 344) (1985), we conclude that appellant's first enumeration of error is without merit and the trial court did not err in denying appellant's motion to suppress.

*Perkins,* 197 Ga. App. at 578-79, 398 S.E.2d at 703-04.

The Georgia court applied the same legal standards that we utilize in North Carolina as noted herein and found that the affidavit was sufficient to establish probable cause.

Many decisions from other jurisdictions reach the same result. *See, e.g., United States v. Colonna,* 360 F.3d 1169 (10th Cir. 2004) (affidavit upheld that recounted defendant's criminal record and results of a trash cover of container placed in front of defendant's home where drugs and paraphernalia were found); *United States v. Shanks,* 97 F.3d 977 (7th Cir. 1996), *cert. denied,* 519 U.S. 1135, 136 L. Ed. 2d 881 (1997) (garbage containers seized from land between alley and defendant's garage where drugs were found held to establish probable cause to search defendant's house); *United States v. Scull,* 321 F.3d 1270 (10th Cir. 2003), *Bono v. United States, cert. denied,* —— U.S. ——, 157 L. Ed. 2d 116 (2003) (evidence of a "trash pull" of trash in front of defendant's residence properly admitted at defendant's trial); *United States v. Crowell,* 586 F.2d 1020 (4th Cir. 1978), *cert. denied,* 440 U.S. 959, 59 L. Ed. 2d 772 (1979) (trash in front of defendant's residence with drugs inside justified issuance of search warrant); *State v. Duchene,* 624 N.W.2d 668 (N.D. 2001) (garbage search along with defendant's prior record justified issuance of search warrant); *United States v. Wilkinson,* 926 F.2d 22 (1st Cir. 1991), *cert. denied,* 501 U.S. 1211, 115 L. Ed. 2d 985 (1991) (trash curbside); *United States v. Reicherter,* 647 F.2d 397 (3d Cir. 1981) (three searches of curbside trash upheld); *United States v. Biondich,* 652 F.2d 743 (8th Cir. 1981), *cert. denied,* 454 U.S. 975, 70 L. Ed. 2d 395 (1981) (garbage left curbside with drug trash and other incriminating numerical notations justified issuance of search warrant); *United States v. Williams,* 75 Fed. Appx. 480 (2003) (curbside trash seizure); *United States v. Harris,* 6 Fed. Appx. 304 (2001) (curbside trash seizure upheld).

In its brief the State cites *State v. Bordner*, 53 S.W.3d 179 (Mo. Ct. App. 2001), *cert. denied,* 535 U.S. 1019, 152 L. Ed. 2d 624 (2002) which has facts similar to those cases listed above and where the search warrant was upheld.

The important lesson from the cases cited above is that the courts normally do infer that garbage on the property normally implicates that property. The evidence of record shows the other neighborhood homes had trash bags in front also. There was no evidence of a communal pickup point. The only evidence that the target bag did not originate with defendant's residence is the trial court's own speculation. By refusing to allow the magistrate to infer that trash in defendant's front yard came from his house, the trial court evinces a grudging review and would require absolute certainty before upholding this warrant. As noted in *Arrington*, probable cause is grounded in practical considerations. The fact that so many jurisdictions have upheld warrants with similar facts set forth in their affidavits demonstrates the logic behind the inference.

In all of the cases set forth above, the only evidence implicating the defendant's residence was the location of the trash. No garbage collectors were interviewed; surveillance did not establish who placed the trash curbside, nor was any documentary evidence bearing the defendant's name discovered. Yet all of these reviewing courts concluded that it was reasonable to draw the inference that trash located in front of the target residence implicated that residence. I do not believe that merely because Raleigh sanitation workers go behind houses to collect garbage the inference that a solitary bag of trash in front of a residence originated from that location is thereby destroyed.

Many other reported cases have held that the location of trash in front of or near the defendant's residence justifies a search warrant once incriminating evidence is found in the trash. *See United States v. Briscoe*, 317 F.3d 906 (8th Cir. 2003); *United States v. Gonzalez-Rodriguez*, 239 F.3d 948 (8th Cir. 2001); *United States v. Dela Espriella*, 781 F.2d 1432 (9th Cir. 1986); *United States v. Shelby*, 573 F.2d 971 (7th Cir. 1978), *cert. denied*, 439 U.S. 841, 58 L. Ed. 2d 139 (1978); *State v. Jacobs*, 437 So. 2d 166 (Fla. App. 1983), *pet. dismissed*, 441 So. 2d 632 (1983); *State v. Kyles*, 513 So. 2d 265 (La. 1987), *cert. denied*, 486 U.S. 1027, 100 L. Ed. 2d 236, *reh'g denied*, 487 U.S. 1246, 101 L. Ed. 2d 955 (1988).

Many of these courts, in applying the totality of the circumstances test also noted the defendant's prior criminal history whereas the trial court here ignored defendant's criminal record even though it is described by the affiant. It was error to fail to credit the inference that this factor made it more likely to be defendant's trash. While a subject's criminal record can never be the central factor, it is error to simply ignore this issue. *See State v. Watson*, 119 N.C. App. 395, 458 S.E.2d 519 (1995). In *United States v. Bynum*, 293 F.3d 192 (4th Cir. 2002) the Fourth Circuit stated:

> An officer's report in his affidavit of "the target's prior criminal activity or record is clearly material to the probable cause determination," *United States v. Taylor*, 985 F.2d 3, 6 (1st Cir. 1993) (citation omitted), *see also United States v. Sumpter*, 669 F.2d 1215, 1222 (8th Cir. 1982) ("An individual's prior criminal activities and record [cited in a search warrant application] have a bearing on the probable cause determination.")[.]

*Id.* at 197-98.

In summary, I believe the trial court and this Court have failed to give proper deference to the magistrate's determination of probable cause. The fact that garbage collectors go behind houses and place bags on the street does not destroy the inference that a bag in front of a residence most likely came from that residence, particularly when other trash bags are observed in front of other residences in the neighborhood. I further believe the trial court, and this Court, failed to properly apply the totality of the circumstances test and give proper weight to the fact that defendant's prior record makes it more likely that the trash is his rather than that of someone else. Accordingly, I would reverse the trial court and deny the motion to suppress.